NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIN FU, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>HUNAN OF MORRIS FOOD INC. d/b/a/ HUNAN RESTAURANT, CATHERINE WEN, and PING WEN,<br><br>         Defendants. | Civ. No. 12-05871 (KM)<br><br>**O P I N I O N** |

*Appearances by:*

Bin Xue
LAW OFFICES OF BENJAMIN B. XUE, P.C.
401 Broadway, Suite 1009
New York, NY 10013

 *Attorney for Plaintiff,*

Gregory J. Skiff
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018

 *Attorney for Defendants.*

**DEBEVOISE, Senior District Judge**

This case arises out of the alleged unpaid overtime and minimum wages due to Plaintiff Min Fu, who worked as a waiter for Defendants Hunan of Morris Food Inc., d/b/a/ Hunan Restaurant ("Hunan" or "Hunan Restaurant"), and its President Catherine Wen and Vice

President Ping Wen (collectively, "Defendants"). The matter comes before the Court pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint in its entirety. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Mr. Fu worked as a waiter for Defendants for over six years, from in or around October 2006 to June 2012. During this time, Mr. Fu alleges that he was not paid proper minimum wages and overtime wages. Mr. Fu is an immigrant from China with a minimum understanding of the English language. During the course of his employment, Mr. Fu performed various work duties for Defendants, including taking food and drink orders, serving food and drinks, cleaning tables, refilling condiments and sauces, preparing food, sweeping floors, and cleaning bathrooms.

At all times relevant to this litigation, Mr. Fu regularly worked between 50 to 60 hours per week. Prior to March 2010, Mr. Fu regularly worked 66 hours per week, and allegedly was improperly paid on a salary basis approximately $400 per month, and was not paid at a rate of 1.5 times the regular hourly wage for overtime when he worked over forty hours a week. Since about August 2010 to June 2012, Mr. Fu was paid an hourly wage of $1.88 an hour, which is less than minimum wage. Mr. Fu contends that Defendants improperly deducted meal and lodging cost against Mr. Fu's already meager cash wage, and that the lodging afforded was an illegal rooming house. Mr. Fu asserts that his actual work hours are not reflected by the time records, if any, that Defendants maintain because Defendants demanded that Mr. Fu clock out but continue to work.

Mr. Fu contends that Defendants failed to inform employees of FLSA wage provisions, including the manner in which the wage for a tipped employee is determined, or the right to

2

receive the minimum wage and overtime rate of one-and-a-half their regular rate. During the course of Mr. Fu's employment, Defendants did not maintain a display containing notices of employees' right to receive the minimum wage and overtime payment in the workplace. Additionally, Mr. Fu takes issue with Defendants' failure to keep full and accurate records of Plaintiff's hours and wages as they are required by the Fair Labor Standards Act ("FLSA") and New Jersey Wage and Hour Law. See 29 U.S.C. 211(c); N.J.S.A. 34:11-56(a)(22). Last, Defendants required that Mr. Fu and other waiters purchase their own uniforms, and never reimbursed them for the costs. Over his course of employment, Mr. Fu had to purchase multiple uniforms at his own costs and expense.

On August 27, 2010, Mr. Fu signed a document entitled "Employee Wage Rate (Regular and Overtime)/Salary Acknowledgment" ("Wage Rate Acknowledgement"), which is written in both English and Chinese. The Wage Rate Acknowledgment establishes that Mr. Fu received a regularly hourly rate of $7.25 and an overtime rate of $10.88. Additionally, Mr. Fu acknowledged and agreed to use a time-clock to record hours worked at the beginning and end of his work shift, and in the beginning and end of his meal breaks for breakfast, lunch, and dinner. The employer is to take a tip allowance in the amount of $5.12 per hour, and a meal allowance in the amount of $0.25 per hour from his regular rate of pay, for three meals a day. Mr. Fu also received lodging from his employer, and the employer was to take a lodging credit in the amount of $35 per week from his gross weekly pay. Last, Mr. Fu acknowledged "that the Employer has posted at a conspicuous place in the restaurant the US Department of Labor and NJ Department of Labor notices concerning my rights to receive minimum wage and overtime. I have reviewed the information contained in these notices and am aware of my rights described therein." (See Catherine Wen Cert., Ex. C.)

A two-year investigation by the Department of Labor (DOL) of Hunan Restaurant resulted in the DOL's production of a "Receipt for Payment of Lost or Denied Wages, Employment Benefits or Other Compensation" ("DOL Release" or "Release"). On October 4, 2010, Ms. Wen produced the Release to Mr. Fu and he signed it. The propriety of this Release is the issue before the Court today. The Release indicates that Mr. Fu would receive a settlement in the amount of $2,976.50 in gross wages (net wages of $1,876.04) due for the period through April 16, 2010. It is undisputed that Mr. Fu received this payment. However, the parties argue over whether mutual assent existed to waive Defendants' liability.

Mr. Fu contests the validity of the Release, and submits that the document provided to him was "blank" and was presented to him "as a piece of routine paperwork" which Ms. Wen "demanded" that he sign. (Am. Compl. ¶ 76.) Ms. Wen did not translate, read, or explain the contents of the Release. (Id. ¶ 77.) Mr. Fu did not understand that he was waiving and releasing his claims against the employer by signing the Release. (Id. ¶ 78.) Moreover, Chinese writing found on the Release was not written by Mr. Fu, and was not inscribed on the document when Mr. Fu signed it. (Id. ¶ 79.) This hand-written notation in Chinese reads "I fully understand the entire content of this document." (See Certification of Min Fu, Dec. 26, 2012, Ex. B.) Mr. Fu explains that he did not "authorize nor witness the inscription of the Chinese texts." (Id. at ¶ 9.) "When my employer asked me to sign documents, I just did as I was told, because I feared that if I were to refuse I would be fired." (Id. at ¶ 11.) In support of his claim that the Release was improperly gained, Mr. Fu argues that the monies due to him for unpaid wages over the two year period of the investigation should have been approximately $49,000.00, a stark contrast from the $2,976.50 he received. (Opp. Br. at 6.)

4

On September 19, 2012, Mr. Fu filed a Complaint which was amended on December 21, 2012 and sets out claims for minimum and overtime wages under the Fair Labor Standards Act and New Jersey Wage and Hour Law; a request for declaration that the Release is a product of fraud and misrepresentation, and therefore should be deemed void and invalid; and a finding that the statute of limitations should be equitably tolled.  Moreover, Mr. Fu brings the FLSA claims pursuant to 29 U.S.C. 216(b), and seeks relief on a collective basis for all individuals who have been employees of Defendants within three years of the date of the complaint.  Thus, Mr. Fu seeks compensatory damages for unpaid minimum and overtime back wages, liquidated damages, pre and post judgment interest, reasonable attorneys' fees, and for such relief as the Court deems proper.

The instant motion before the Court is based on Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss is reviewed pursuant to Federal Rule of Civil Procedure 12(b) (6), which provides for dismissal of a claim for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b) (6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether the plaintiffs will ultimately prevail in a trial on the merits, but whether

they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

Rule 8 of the Federal Rules of Civil Procedure merely requires a "short and plain statement" to put the defendants on notice. Fed. R. Civ. P. 8(a)(2). To meet this standard, a plaintiff's claim must be "plausible on its face" such that the Court may draw a "reasonable inference" that the defendants are liable. Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 556 (2007). See also Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation."). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (internal citations omitted).

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, the Twombly Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts

asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.

A district court deciding a motion to dismiss generally does not consider material beyond the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Industries, 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994). Typically, when a court does rely on matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and provide all parties with a reasonable opportunity to present all material pertinent to the motion. See Fed. R. Civ. P. 12(d). This rule allows the plaintiff an opportunity to respond to any extraneous documents that the court considers. Pension Benefit, 998 F.2d at 1196. An exception to the general rule exists, however, so that a court may consider extraneous documents to which a plaintiff refers in the complaint or on which he claims in the complaint were based without converting the motion to dismiss into one for summary judgment. Burlington Coat Factory, 114 F.3d at 1426; Pension Benefit, 998 F.2d at 1196. The rationale behind the exception is that, when a complaint refers to or relies on the document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence in greatly diminished." Pension Benefit, 998 F.2d 1192 at 1196-97.

**B. Analysis**

As a preliminary matter, Defendants argue that dismissal is warranted here under Fed. R. Civ. P. 12(b)(1) due to the Court's lack of subject matter jurisdiction because Mr. Fu signed a DOL Release purporting to waive Defendants' liability. The pertinent provision of the FLSA that grants federal courts jurisdiction is found in 29 USC 216(b): ". . . An action to recover the

liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in on behalf of himself or themselves and other employees similarly situated." It is therefore clear that Congress intended to tether jurisdiction to meet the statute's requirements. See e.g., CNA v. United States, 535 F.3d 132, 142-43 (3d Cir. 2008); Arbraugh v. Y & H Corp., 546 U.S. 500, 510-11 (2006). Moreover, the waiver provision of 29 U.S.C. 216(c), infra, which is the statutory basis of the DOL Release, contains no such limitation on jurisdiction. Thus, Defendant's motion to dismiss based on lack of subject matter jurisdiction is denied.

The issue is whether the factual allegations, reasonably inferred in Mr. Fu's favor, sufficiently put Defendants on notice and support a viable claim under the FLSA and the New Jersey Wage and Hour Law.

The FLSA regulates, as a general matter, the minimum wages and overtime wages paid to workers. See 29 U.S.C. 206, 207. Section 16 of the FLSA, 29 U.S.C. 216, addresses courses of action available to remedy an employer's violation of the statute. Subsection 16(b) provides, in relevant part, for a private cause of action to recover unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. 216(b). The same subsection also allows a prevailing plaintiff to recover a reasonable attorney's fee and the costs of the action from the defendant. Id.

The Secretary of Labor's supervision of a settlement for FLSA back wages is required pursuant to subsection 16(c). See e.g., Dent v. Cox, 502 F.3d 1141, 1144 (9th Cir. 2007).[1] The subsection provides:

> The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the *agreement* of any employee to accept such payment shall upon *payment in full* constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. . . .
>
> 29 U.S.C. 216(c) (emphasis added).

Thus to establish a valid waiver, the FLSA requires that the employee agree to accept the amount tendered, and that the employee receive the payment in full of that amount. See id., see also

---

[1] Subsection 216(c) was added in 1949 to facilitate the voluntary resolution of claims for back wages, while still providing protection for workers through DOL supervision.

> Prior to [1949,] employers had been reluctant to reach voluntary settlements with employees over claims for back wages because courts had held that any purported waiver or release of rights to unpaid compensation was null and void as against public policy and lacking in consideration. Thus an employer who settled a claim for back wages could never be sure that the employee with whom he settled would not later sue to collect liquidated damages and attorneys' fees. The addition of the waiver provision was intended to change this situation and create an incentive for employers voluntarily to accept settlements supervised by the Wage and Hour Division.

Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 539 (5th Cir. 1977) (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946); Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1943); S. Rep. No. 640, 81st Cong., 1st Sess. __, *reprinted* in [1949] U.S. Code Cong. Serv. 2241, 2249 ("[The provision] should be welcomed by fair-minded employers who wish to make restitution for perhaps unwitting violations of the act by encouraging them to do so in such a manner to insure that their liability will be limited to the amount of wages due.")).

Dent, 502 F.3d at 1146. Basic acceptance of the settlement funds is not sufficient. "Agreement" is more than the acceptance of funds, and must exist "independent of payment." Walton v. United Consumers Club, Inc., 786 F.2d 303, 305 (7th Cir. 1986) (examining 29 U.S.C. 216(c) and the relevant Senate report, S. Rep. No. 640, 81st Cong., 1st Sess. (1949), reprinted in 1949 U.S. Code Cong. & Adm. News 2247) ("The Senate states "agreement" and "payment in full" as distinct requirements, so there is no reason to think that Congress wanted payment alone to do.").

The question is whether Mr. Fu agreed to the terms of the DOL Release to establish a valid waiver for back wages beyond the settlement terms. Mr. Fu sets forth various factual assertions regarding the circumstances under which he signed the DOL Release, his unfamiliarity with the English language, and his former employer's failure to explain to him the full terms of the agreement. It is well established that "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d Cir. 2008).[2]

---

[2]   See also Morales at 222, citing:

>   Paper Express, Ltd. v. Pfankush Maschinen, 972 F.2d 753, 757 (7th Cir. 1992) (addressing a contract dispute between an Illinois corporation and a German corporation and holding that parties should be held to contracts, even if the contracts are in foreign languages or the parties cannot read or understand the contracts due to blindness or illiteracy); Shirazi v. Greyhound Corp., 145 Mont. 421, 401 P.2d 559, 562 (Mont. 1965) (holding Iranian student subject to limitation contained in baggage receipt and stating that "[i]t was incumbent upon [the plaintiff], who knew of his own inability to read the English language, to acquaint himself with the contents of the ticket"); Paulink v. Am. Express Co., 265 Mass. 182, 163 N.E. 740, 741 (Mass. 1928) (stating that "plaintiff was bound by the [ ] terms [of foreign bills of exchange], in the absence of deceit on the part of the defendant, even though not

In Morales, the Third Circuit Court of Appeals considered an employer's request to stay a wrongful termination suit pending arbitration. The District Court of the Virgin Islands found that Mr. Morales was not bound to the arbitration clause due to lack of mutual assent because he did not speak English, and denied the motion to stay. However, the Third Circuit Court of Appeals reversed and found that because Mr. Morales did not allege that his employer acted fraudulently or misrepresented the contract, he was bound to its terms despite his unfamiliarity with the English language. Id. at 223. Therein, the employer provided an "incomplete translation" of the employment contract which excluded the terms of the arbitration clause. Id. at 233, n. 2. Specifically, a job orientation trainer asked Mr. Hodge, a bilingual applicant also present at the orientation, and whom Mr. Morales knew, to explain to Mr. Morales what the trainer was saying and to help him to complete the documents. Id. at 220. Apparently, Mr. Hodge understood about eighty-five percent of written and spoken English. Mr. Hodge did not explain the arbitration clause to Mr. Morales, and Mr. Morales did not specifically ask him what he was signing although Mr. Morales initialed each page of the contract, including those containing the arbitration provisions. Id. at 220, 223 n. 2. The trainer testified that he did explain the arbitration provisions in English to the group, and that Mr. Hodge was speaking to Mr. Morales in a foreign language during the orientation. Id.

---

understanding their purport and ignorant of the English language"); Wilkisius v. Sheehan, 258 Mass. 240, 155 N.E. 5, 6 (Mass. 1927) (holding that Lithuanian husband and wife, who did not speak or understand English and used an interpreter to contract for an exchange of real estate, were bound by the terms of the agreement because "their failure to understand these details was not due to fraudulent acts on the part of the defendant but to their own inability to read, write, speak or understand the English language, and to the incapacity of the interpreter").

Nobably, the Third Circuit Court of Appeals explained that while it was "sympathetic to Morales' situation, Hodge *did not misread or misrepresent* the Agreement to Morales, and the 'incomplete translation' was due to Morales' failure to request any explanation or translation." Id. at 223, n. 2 (emphasis added). The court explained that it was Mr. Morales' obligation to ensure that he understood the contract before signing, and he did not ask for the document to be translated "word-for-word or ask to take the [contract] home and have it translated, notwithstanding the fact that he testified that, in the past, he had paid someone to translate the documents for him." Id. at 223.

To establish lack of assent to a contract, courts looks to evidence of fraud or misrepresentation by the other party, unless an indication of the signer's negligence is present. See id. at 223 (citing Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 538 (5th Cir. 2003) (recognizing that "[i]t is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms," and that a defendant, "illiterate or not, would be bound by the terms of the arbitration agreements," but remanding for adjudication of a claim of fraud in the inducement); Pimpinello v. Swift & Co., 253 N.Y. 159, 163, 170 N.E. 530 (1930) (stating that "[i]f the signer is illiterate, or blind, or ignorant of the alien language of the writing, *and the contents thereof are misread or misrepresented to him* by the other party . . . *unless the signer be negligent*, the writing is void") (emphasis added)). See also Soto v. State Indus. Prods., Inc., 642 F.3d 67, 78 (1st Cir. 2011) (Unless intimidation or unconscionability are present, "[t]he fact that [plaintiff] did not 'fully understand that agreements that she signed because of her lack of fluency in English, of which she was aware, does not render void her consent to [the agreement].").

Defendants argue that <u>Morales</u> is instructive here in that the enforceability of an agreement is immaterial of whether an offeree cannot read, write, speak or understand the English language.  This is persuasive to the extent that Mr. Fu takes issue with his employer's failure to translate, read, or explain the documents to him. (<u>See</u> Am. Compl. ¶ 77.)  Again, at this stage of review, the Court is to accept the factual allegations in the Amended Complaint as true and drawing reasonable inferences in favor of the Plaintiff.  <u>See</u> <u>Morse</u>, 132 F.3d at 906, <u>supra</u>.  Rule 8 simply requires that the Complaint provide a "short and plain statement" to put defendants on notice of the claims and basis of the claims against them.  Fed. R. Civ. P. 8(a)(2), <u>supra</u>.

In support of his claim that the DOL Release is void and invalid, Mr. Fu contends that Ms. Wen presented a "blank" Release form to him "as a piece of routine paperwork and demanded that [he] sign." (Am. Compl. ¶ 76.)  Mr. Fu "did not understand that he was waiving and releasing his claims against the employer by signing the Release." (Am. Compl. ¶ 78.)  Moreover, the Chinese writing on the Release was not written by Mr. Fu, and it was not there when he signed the document.  (Am. Compl. ¶ 79.)  As a result of this exchange, Mr. Fu argues that the Release "is a product of fraud, misrepresentation, and a complete disregard for the notion of honest dealings between employers and employees[,]" and that he was "actively misled and deceived as to his rights under the FLSA and NJ law."  (Am. Compl. ¶ 80, 81.)  In his Certification attached to the opposition to the motion considered today, Mr. Fu further explains that "[w]hen my employer asked me to sign the documents,  I just did as I was told, because I feared that if I were to refuse I would be fired." (Fu Cert., Ex. B, ¶ 11.)

The facts here depart with <u>Morales</u> in that Mr. Fu's claim is based in fraud and misrepresentation.  Ms. Wen presented an incomplete Release to him as routine paperwork and

13

demanded that he sign it. Mr. Fu feared that he would be terminated if he refused to sign. Mr. Fu has asserted a viable misrepresentation and fraud claim which calls into question his lack of assent to the terms of the contract to the extent that his employer may have misrepresented the contents of the document, fraudulently included Chinese text to the document after Mr. Fu affixed his signature, and coerced a signature under potential threat of retaliation. The balance between the potential fraud and/or misrepresentation present here and Mr. Fu's potential negligence in signing the document is a question of fact which is premature to consider at this stage of litigation. Defendants are sufficiently on notice of the claims against them, and Mr. Fu should be afforded the opportunity to offer evidence in support of his claims. See In re Rockefeller Ctr. Prop., Inc., supra, 311 F.3d at 215.

Defendants cite a decision arising from the Seventh Circuit Court of Appeals as supporting the notion that "courts have concluded that a release signed by the employee in connection with any such payment, 'provides a definitive conclusion to a claim under the FLSA.'" (MTD Br. at 8, misquoting Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). See also Reply Br. at 7.) Defendants not only misquote Walton, but misconstrue the relevant premise of the case altogether. The relevance of Walton is that a receipt of payment absent an agreement to waive liability does *not* suggest that plaintiffs intended to settle their claims and simply neglected to sign the magic words. In Walton, the DOL either was not asked to solicit an agreement or did not assent to such an agreement, and as such the DOL did not send out the relevant forms or ask the employees to surrender any rights. Walton instructs that "[u]nless [the court] were to hold that a compromise between [an employer] and its employees is enough to bar other litigation, we must let the Secretary [of the Department of Labor] decide when employees are entitled to sign an 'agreement' under § 16(c)." Id. at 306-307.

14

Thus, Walton is not completely on point because here, the DOL investigated the claim and sent the Release, however a question remains as to whether the Release was fraudulently collected when Ms. Wen administered it to Mr. Fu. The case law is clear that the receipt of payment and acknowledgement of release are two necessary and separate elements of the waiver. If mutual assent to the acknowledgement of release is called into question, the waiver may be invalid as a matter of law.

Defendants further argue that because Mr. Fu was aware of but did not follow the employer's policy for reporting unpaid time, he is barred from raising his overtime wages claims. However, Mr. Fu duly asserts that he was instructed to clock-out but continue working at the end of his work day. Thus, a factual question remains as to this issue. Defendants' reliance on White v. Baptist Memorial Health Care Corp., 2011 U.S. Dist. LEXIS 30406 (March 23, 2011), aff'd 699 F.3d 869 (6th Cir. 2012), is not persuasive. Therein, the District Court for the Western District of Tennessee granted summary judgment in favor of the employer because Ms. White did not record her overtime hours pursuant to the policy although she received full compensation when she did report them. Therefore, Ms. White's reporting of her overtime was not futile. Additionally, Ms. White offered no evidence suggesting that her employer had reason to know when she missed her meal breaks. However here, Mr. Fu alleges that he was specifically and directly instructed to clock out and continue working, and therefore was prevented from reporting overtime. Clearly, there is no issue of Defendants' lack of notice or awareness of overtime hours performed.

Last, Defendants argue that the New Jersey Wage and Hour Law permits an employer to take credits for meal and lodging in addition to tip credits, and therefore the meal and lodging was not improperly deducted from Mr. Fu's tip rate. Indeed, the Administrative Code permits

application of meals and lodging toward the minimum wage unless an employee elects not to receive meals and lodging.  See N.J.A.C. 12:56-14.8.  However, the Code also mandates that "[e]mployers subject to the [FLSA] must pay the Federal cash wage rate of $2.13 and must demonstrate that the balance of the [$5.12] minimum wage required under State law is paid through gratuities in accordance with N.J.A.C. 12:56-4 and 12:56-8." N.J.A.C. 12:56-14.4.  Additionally, "[w]here cash wages have been established as a condition of employment through agreement between the employer and employee . . .  gratuities, food and lodging shall *not* be included as part of such cash wages." N.J.A.C. 12:56-14.7 (emphasis added).  New Jersey law therefore explicitly prohibits Defendants from the deductions which Mr. Fu alleges were taken directly from his cash wages.

With regard to the statute of limitations, Defendants contend that Mr. Fu is not entitled to equitable tolling that would expand liability for violations prior to September 19, 2010 because Mr. Fu was aware of his rights as of August 27, 2010 when he was presented with and signed the Wage Rate Acknowledgement form printed in both English and Chinese.  Defendants summarily argue Mr. Fu's signature on both the Wage Rate Acknowledgment form and the DOL Release bar any equitable tolling claims he may have.  (MTD Br. at 12, citing Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007.)

Conversely, Mr. Fu argues that the complaint sets forth sufficient factual allegations to state a plausible claim for equitable tolling here because he was actively misled and deceived as to his rights under FLSA and applicable New Jersey law when Ms. Wen presented the blank Release to him.  Mr. Fu argues that his factual allegations, which must be taken as true at this phase, constitute a sufficient pleading of his claim for equitable tolling. (Opp. Br. at 12; See Am. Compl. ¶¶ 82-88.)

Claims brought pursuant to the New Jersey Wage and Hour Law must be filed within two years of the date of accrual of an alleged violation. N.J.S.A. 34:11-56a25.1. Claims brought pursuant to the FLSA also have a two-year statute of limitations, unless the violation is willful, which extends the limitations period to three years. 29 U.S.C. 255(a). Here, the Complaint was filed on September 19, 2012. The discussion above establishes that the Release was fraudulently obtained on October 4, 2010. Thus, the three year statute of limitations shall apply due to willful violation of the federal claim, and a two-year statute of limitations shall apply for the state claim. In other words, federal violations arising after September 19, 2009 and state violations arising after September 19, 2010 are within the statute of limitations here.

The parties argue over whether the claims should be equitably tolled due to deception arising from the October 4, 2010 Release. The equitable tolling doctrine applies "[if] the defendant has actively misled the plaintiff[.]" United States v. Midgley, 142 F.3d 164, 179 (3d Cir. 1998) (internal citations omitted). The doctrine may excuse a plaintiff's non-compliance with the statutory limitations at issue when the defendant actively misled the plaintiff, and the deception caused the plaintiff's non-compliance with the limitation provisions. See Ruehl v. Viacom Inc., 500 F.3d 375 (3d Cir. 2007), relying on Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1884). "[E]quitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." Id. (quoting In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004).

At this stage, Mr. Fu makes sufficient factual allegations to state a plausible claim for equitable tolling when he asserts that he was actively misled and deceived as to his rights when he was presented with a blank Release, when his signature was demanded, and when Chinese

was later inscribed on the form.  Discovery shall reveal whether Mr. Fu would or should have discovered essential information bearing on his claim for backwages such as to extend the limitations period prior to September 19, 2009 on the federal violations and September 19, 2010 on the state violations due to deception occurring on October 4, 2010.  In sum, it is premature to dismiss the availability of equitable tolling.

### III.     CONCLUSION

Mr. Fu has set out viable claims for minimum and overtime wages in violation of the Fair Labor Standards Act and the New Jersey Wage and Hour Law, and has sufficiently put Defendants on notice of such claims.  The motion to dismiss based on failure to state a claim upon which relief may be granted is therefore denied.  The motion to dismiss for lack of subject matter jurisdiction is also denied.  The Court will enter an order implementing this opinion.

        **/s/ Dickinson R. Debevoise**
        **DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated:  November 6, 2013**